UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 19-10354-LTS |
| CHUKWUEMEKA EZE. | ) ) ) | |

ORDER ON MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 53)

October 15, 2020

SOROKIN, J.

Chukwuemeka Eze, who is presently serving a sentence for bank fraud and related crimes, seeks an order pursuant to 18 U.S.C. § 3582(c)(1)(A) reducing his sentence to time served, citing the combination of his documented health conditions and the present COVID-19 pandemic as extraordinary and compelling reasons justifying his release.  Doc. Nos. 53, 65.[1] The government opposes his request.  Doc. No. 71.  The Court held a hearing on the motion on October 13, 2020.  Doc. No. 74.  For the following reasons, Eze's motion is DENIED.

On November 7, 2019, Eze pleaded guilty to an information charging bank fraud in violation of 18 U.S.C. § 1344, four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  Doc. Nos. 22, 35, 38.  The charges arose from Eze's substantial participation in a sophisticated scheme to steal hundreds of thousands of dollars from a foreign company.[2]  The scheme

---

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers assigned by ECF.

[2] The Court's recitation of the circumstances of the offense, Eze's criminal history, and the relevant sentencing guidelines are derived from the Presentence Report ("PSR") prepared by U.S. Probation.  The Court also notes that the foreign company that was a victim of Eze's crime has expressed its opposition to Eze's motion.  Doc. No. 72.

involved the use of fraudulent invoices, the opening of bank accounts at a major U.S. bank using the identity of a person Eze did not know and without that person's authorization, and the creation of multiple shell companies for laundering the stolen funds. This was not Eze's first conviction for a financial fraud crime—he was convicted in state court in 2016 of identity fraud, credit card fraud, and money laundering. He committed the crimes that led to this federal case shortly after he finished serving the custodial portion of the sentence imposed for his earlier state offenses.

The advisory guidelines sentencing range was 78 to 97 months' imprisonment, and the aggravated identity theft charge carried a mandatory minimum sentence of two years consecutive to the sentences imposed on the other charges. On February 3, 2020, the Court sentenced Eze to 51 months of incarceration—27 months on the bank fraud and money laundering counts, with a consecutive 24 months on the aggravated identity theft count. Doc. Nos. 47, 48. To date, Eze has served less than sixteen months of his sentence; his expected release date is January 23, 2023. From April until late August 2020, Eze was housed at the Federal Correctional Institution ("FCI") in Fairton, New Jersey, where he spent his entire stay in a quarantine unit due to the current pandemic. Approximately six weeks ago, he was transferred to FCI Otisville in New York, where he was quarantined again until mid-September, when he was moved to the minimum-security satellite camp there. Doc. No. 65 at 4-5.

In early August 2020, Eze asked the warden at FCI Fairton to file a motion for a sentence reduction on Eze's behalf. Doc. No. 66-3. Through counsel, Eze renewed his request on

September 4, 2020 to the warden at FCI Otisville following his transfer.  Doc. No. 66-5.  To date, Eze has not received a response from either warden.[3]

Eze's motion requires the Court to determine whether, having "consider[ed] the factors set forth in [18 U.S.C. §] 3553(a)," Eze has identified "extraordinary and compelling reasons" warranting a reduction in his sentence.  § 3582(c)(1)(A)(i).  The Court's assessment is guided by the Policy Statement of the Sentencing Commission in § 1B1.13 of the United States Sentencing Guidelines.  § 3582(c)(1)(A)(ii).  That statement permits a reduction in sentence if "the court determines that" three conditions are met:  1) "extraordinary and compelling reasons warrant the reduction"; 2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and 3) "the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13(1)(A), (2), (3).

Eze is 38 years old with a documented history of hypertension (for which he is prescribed medication), asthma (for which he is prescribed an inhaler), and obesity.  Doc. No. 65 at 3-4; see generally Doc. Nos. 66-6, 66-7.  Because obesity is a condition identified by the Centers for Disease Control and Prevention ("CDC") as one which places an individual "at increased risk of severe illness from COVID-19," CDC, "People with Certain Medical Conditions," http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 6, 2020), the government agrees that Eze has satisfied the first of the three required conditions listed in the Policy Statement, Doc. No. 71 at 4.[4]  Thus, the

---

[3] The government concedes that Eze satisfies § 3582(c)(1)'s exhaustion requirement and, thus, that the Court has jurisdiction to entertain his request.  Doc. No. 71 at 3.

[4] The government urges that Eze's other conditions—asthma and hypertension—are not sufficiently severe to constitute "extraordinary and compelling reasons justifying his release." Doc. No. 71 at 4 n.3.  According to the CDC, hypertension and moderate-to-severe asthma are conditions which "might" increase one's risk of serious illness arising from COVID-19.  The Court need not resolve the implications of Eze's other conditions, as it agrees he has surpassed

Court proceeds to assess the remaining conditions—public safety, and the § 3553(a) sentencing factors.

Though Eze's health conditions are matters of legitimate concern, he is now and for the anticipated balance of his sentence will likely remain at the FCI Otisville prison camp. His prolonged experience in quarantine has ended, and he is in conditions that are consistent with the expectations of the parties and the intent of the Court when his sentence was imposed. The camp at FCI Otisville presently houses a population well below its capacity. Doc. No. 71 at 6. According to the Bureau of Prisons ("BOP"), there have been twenty-five confirmed cases of COVID-19 among inmates at FCI Otisville since the start of the pandemic, with four active cases at this time (two inmates and two staff members). See BOP, "COVID-19 Coronavirus," http://www.bop.gov/coronavirus/index.jsp (last visited Oct. 13, 2020) (detailing active cases and inmate test information for each BOP facility). The two active inmate cases were detected during intake testing, and the two individuals were not admitted to the general population. Doc. No. 71 at 7. Thus, the record does not suggest that Eze is currently exposed to unduly harsh or excessively risky conditions of confinement such that the Court would deem it necessary to reweigh the § 3553(a) factors on that basis.

Furthermore, Eze committed a serious crime for which he has served less than a third of his sentence—and less than the statutory mandatory minimum for one of the six counts to which he pleaded guilty. He committed the crime while living at the same home to which he asks this Court to release him now. Though his fiancée's affidavit is a moving testament to her continued support for Eze and her dedication to helping him maintain a law-abiding life upon his release,

---

the first hurdle identified in the Policy Statement in any event, and its analysis of the other two factors is not altered by the severity (or lack thereof) of Eze's asthma and hypertension.

Doc. No. 67, Eze committed the crime for which he is presently incarcerated notwithstanding her support, notwithstanding his children's reliance upon him, and notwithstanding having only recently returned from serving a fifteen-month state sentence for a similar crime.  Given all of this, the Court finds Eze has not demonstrated that the Court should alter the manner in which it weighed the § 3553(a) factors at the time of Eze's sentencing.[5]

Under the totality of the circumstances, having carefully considered the factors identified in 18 U.S.C. § 3553, the safety of the public, and the other conditions listed in § 1B1.13 of the Sentencing Guidelines, the Court finds that a reduction in Eze's sentence at this time is neither warranted nor consistent with the Sentencing Commission's Policy Statement.  Accordingly, Eze's motion for compassionate release (Doc. No. 53) is DENIED.[6]

                                                     SO ORDERED.

                                                   /s/ Leo T. Sorokin
                                                  United States District Judge

---

[5] The Court's resolution of this motion does not diminish the work Eze has undertaken to rehabilitate and improve himself—in particular, by seeking out and completing educational opportunities and securing a job—despite the difficult circumstances he has faced during his time in prison to date.  The Court encourages Eze to continue such efforts, as they are likely to meaningfully repair some of the harm done by his crime to both himself and his family.

[6] The Court apologizes for mispronouncing the defendant's name during the motion hearing.  The Court also acknowledges and appreciates the thoughtful and capable briefing and argument from both parties, as well as the government's sensible focus on only those matters subject to reasonable dispute.